## F. G. BAKER AND ANOTHER v. HANS E. HANSON.[1]

December 21, 1923.

No. 23,600.

**Finding not justified by evidence.**
> The evidence does not justify a finding that, when the parties entered into a written contract for lathing certain buildings, the defendant promised to have them ready for lathing in succession, no such promise being set forth in the contract as written.

Action in the municipal court of Minneapolis by the persons doing business as Twin City Lathing Company to recover $260 upon a building contract. The answer interposed a counterclaim for $334.66. The case was tried before Charles L. Smith, J., who made findings and ordered judgment in favor of plaintiffs for $220. From an order denying his motion for a new trial or for judgment in his favor

[1] Reported in 196 N. W. 480.

on the ground that the judgment ordered is not supported by the evidence in the case, defendant appealed. Reversed.

*Elias Rachie*, for appellant.

*L. W. Crawhall*, for respondents.

LEES, C.

Late in the winter of 1922 the Noble Realty Company was erecting three apartment buildings on certain lots it owned in the city of Minneapolis. It let out the lathing and plastering to the defendant and he sublet the lathing to plaintiffs for $266.67 for each building. They lathed one of the buildings, finishing their work on March 29, 1922. They were prepared to go on with the work, but the buildings were not ready. Claiming that they had suffered a loss because they could not and did not lath the other buildings as they intended, they brought this action to recover $196.50 damages, and, in addition, a balance of $50 due for lathing the first building. The court found that they were entitled to recover $170 as damages and $50 for the work they had done, and defendant has appealed from an order denying a new trial.

The contract was in writing and appears upon its face to be a complete statement of the terms agreed upon. Nevertheless plaintiffs were permitted to show without objection that when it was executed defendant promised to have the second and third buildings ready for lathing in time to enable them to go from the first to the second and from the second to the third without delay, so the work could be done without interruption. Neither the second nor the third building was ready for lathing until after May 1, 1922, when there was a substantial increase in the wages of lathers. Plaintiffs refused to do the work after May 1 at the contract price, but offered to do it if defendant would pay more. He refused and had the work done by someone else. Plaintiffs showed that they could have finished lathing the buildings prior to May 1 if they had been ready in succession so there would be no delay in the work. Asked how much profit was made on the first building, one of the plaintiffs answered: "We figured about $85 or $90," and added that the same profit would have been made on each of the other buildings if the work could

have been done prior to May 1. He also testified that no other work could be obtained until some time after it was known that the second and third buildings would not be ready for lathing so as to permit the work to go on without interruption.

Defendant denied that he made the promise to which plaintiffs testified and showed that as a subcontractor under the Noble Realty Company he had no control over the erection of the buildings. He also showed that, when plaintiffs refused to perform the contract, he was compelled to hire other lathers to do the work at a substantial increase over the price fixed in the contract. There was evidence showing that early in March, when plaintiffs began to lath the first building, only the foundations for the other two were in and that brick-laying was not begun until the end of March. Unquestionably defendant had no control over the Noble Realty Company in the prosecution of its building operations. He could not hasten the erection of the buildings and plaintiffs must have known it. Yet they say defendant unconditionally promised to have the buildings ready for lathing in time to permit the work to be done without interruption or delay. Such a promise is so inconsistent with every reasonable probability that it is difficult to believe that it was made. This, in connection with the fact that the contract makes no reference to the alleged promise, compels the conclusion that it is impossible to sustain the finding that "defendant agreed that the first building would be ready for lathing about March 15, 1922, and that each of the other buildings would be ready for lathing in succession as soon as the lathing on the first building was completed."

The counterclaim which defendant attempted to plead may defeat a recovery of the balance due plaintiffs' for lathing the first building, but that is a matter to be determined when the case is tried again. There should be a retrial of all the issues.

Order reversed and a new trial granted.